## BOARD OF COUNTY COMMISSIONERS OF BIG HORN COUNTY v. WOODS ET AL.

### (No. 613.)

COUNTIES—CREATION—ORGANIZATION—DIVISION—STATUTORY CON-
STRUCTION—CONSTITUTIONAL LAW—SUBMITTING QUESTION OF DI-
VISION OF COUNTY TO VOTE OF ELECTORS—STATUTES—VALIDITY—
SPECIAL LEGISLATION.

1. The words "created" and "formed" as used in Section 1 of
   the Act known as Chapter 19 of the Laws' of 1909, which
   declares that certain described property then constituting a
   part of Big Horn County "is hereby created and formed a
   county * * * by the name of Park County," are to be
   construed in connection with the constitutional provision
   that no county shall be divided unless a majority of the
   qualified electors of the territory proposed to be cut off
   voting on the proposition shall vote in favor of the divi-
   sion, and with the provision of Section 2 of the Act that
   until Park County shall have organized and elected of-
   ficers, as provided by law, and said officers shall have
   qualified as such, the said county shall be attached to
   and constitute a part of Big Horn County for judicial,
   revenue and election purposes, including representation
   in the Legislature; and, when so construed, they are not
   to be understood as causing the immediate division of
   Big Horn County, or as showing a legislative intention
   to divide said county without the vote required by the
   Constitution.

2. The provision of the Constitution, that no county shall be
   divided unless a majority of the qualified electors of the
   territory proposed to be cut off voting on the proposition
   shall vote in favor of the division, does not prevent the
   enactment by the Legislature of a valid law defining the
   boundaries and giving a name to an unorganized county,
   although the territory included within such boundaries
   is then a part of an organized county; but such a law
   may be enacted, leaving the vote upon the question of
   division required by the Constitution to be taken subse-
   quently under a statute providing therefor, and, until
   such vote is taken, and a majority of the qualified elec-
   tors of the territory proposed to be cut off voting on the

proposition vote in favor of the division, the old county will not be. divided, within the meaning of the constitutional provision aforesaid.

3. The Act known as Chapter 19, Laws of 1909, creating Park. County is not void as in conflict with the Constitution prohibiting the division of a county unless a majority of' the qualified electors of the territory proposed to be cut off voting on the proposition vote in favor of the division,. but said act is in the nature of an enabling act to the people residing within the territory therein described, to. organize the county named in the act under statutes contemplated by the Constitution, including as a condition. precedent to final organization, the taking of the vote required by the Constitution upon the question of division..

4. Such act is not void as special legislation, for the Constitution contemplates the creation of new counties, and the fixing of the boundaries of a new county, and giving it a name is a legislative function, and necessary to its creation.

5. Section 1 of an Act of 1895 provided that any county "heretofore or hereafter" created and formed, but which remains unorganized may be organized as provided in this: act. The word "heretofore" was omitted from the section as it appears in the subsequent revision of the statutes without apparent legislative authority. *Held,* (1) That the section should be read as originally enacted. (2) That. the word "hereafter" as used and continued in the section is to be construed as applying to any county created. after the passage of the Act of 1895, from which the section is taken.

6. The Act known as Chapter No. 75, Laws 1909; amending· certain sections of the Revised Statutes of 1899 relating to the organization of counties, so as to provide for submitting to the qualified electors of the territory proposed. to be cut off from another county, the question of such division, and the location of the county seat of the proposed new county, is a general law, and the subjects embraced therein are cognate and relate to the same general . subject, and is not therefore void as in conflict with the constitutional provision that no bill, with certain exceptions, shall be passed containing more than one subject,. which shall be clearly expressed in its title.

[Decided February 10, 1910.]          (106 Pac. 923.)
[Rehearing denied March 29, 1910.]    (107 Pac. 753.)

ON RESERVED CONSTITUTIONAL QUESTIONS from ·the District Court, Big Horn County, HON. CARROLL H. PARMELEE, Judge.

*P. W. Metz, S. T. Corn* and *W. S. Metz,* for the plaintiff.

The Act creating Park County took effect according to its terms from and after its passage, and therefore it acquired its full force and effect, whatever that is, upon its approval by the Governor, February 15, 1909. At the time the Act was approved a majority of the qualified electors of the territory proposed to be cut off had not voted in favor of the division, as they were required to do before the county could be divided under the closing sentence of Section 2 of Article XII of the Constitution. That the creation of Park County out of territory cut off from Big Horn County constitutes a division of the last named county under the Constitution seems to be plain. It is therefore a mere matter of statement requiring no argument that on the date of the approval of the Act creating Park County the Legislature was without authority to divide Big Horn County by creating the new County of Park out of a portion of its territory. Such authority had been expressly denied by the Constitution, except upon the condition precedent that a majority of the electors of the territory to be cut off should vote in favor of the division. The creation of counties is a legislative function. (Com'rs v. Perkins, 5 Wyo. 166.) The Act in question recognizes this principle. It does not undertake to provide a method by which the county should be · formed, but it purports to form the county by virtue of its own provision. It operates in *praesenti* or not at all. It may well be admitted that if the Legislature had so chosen it might have defined the boundaries and given a name to the proposed new county, have provided for a vote upon the question of division, and for taking such other or further steps as might be deemed necessary or convenient, and then have further provided, that upon the performance of such requirements the defined territory should become a county. But that is entirely aside from the question in this case,

for the Legislature did not undertake to so provide. We submit, therefore, that the Act is in direct violation of the Constitution and was at the time of its passage entirely void.

The second Act in question, approved February 24, 1909, which, by amending the statutes concerning the organization of counties, attempted to provide for a sumbission of the question of division to the voters, cannot be held to make the first Act creating Park County valid and operative for the purpose of dividing Big Horn County, the creation of Park County, or for any other purpose. The first Act was unconstitutional when passed, and inoperative as though it had never been passed. The invalidity dates from its enactment. (Cooley Const. Lim. 188.) The Act being void from the time of its enactment the subsequent statute could not have the effect of giving it validity. (State v. Tuffly, 20 Nev. 427, 22 Pac. 1054.) The last Act was not an amendment of the Park County Act and does not purport to be such an amendment, but it is independent legislation.

The Legislature cannot delegate its powers to pass laws. (Cooley Const. Lim. 117, 118; Lammert v. Lidwell, 62 Mo. 190; Home Ins. Co. v. Swigart, 104 Ill. 665; People v. Reynolds, 5 Gilm. (Ill.) 1; O'Neil v. Ins. Co., 106 Pa. 76; Locke's App., 72 Pa. St. 491; Barto v. Hinrod, 4 Seld. 483.) The Legislature may enact a law, the ultimate operation of which may be made to depend upon a contingency, but the statute must be a complete and absolute expression of the legislative will—a law *in praesenti,* to take effect *in futuro.* (26 Ency. Law, 567.) If, then, the Legislature cannot by express provision submit to the voters whether an act shall take effect, the reason is stronger that when there has been no attempt at submission no subsequent vote can give validity to an otherwise invalid act.

It is fundamental that no election can be held unless by virtue of some law in force at the time it is held, and unless the Legislature has provided the necessary machinery for holding it. (10 Ency. Law, 563.) By the statute under which it is claimed the vote on the question of division was

táken, such vote is only provided for in the case of a county already created and formed, and as a part of the process of its organization. Park County had not been created or formed at the time of the appointment of the temporary Commissioners, for the reason that there had been no vote upon the question of division, and it cannot be created or formed without such vote. The act of the Governor in appointing the temporary Commissioners was premature and unauthorized by law. And such appointment gave them no legal authority for calling and holding an election. The holding of an election upon the division was a condition precedent to the appointment of such Commissioners.

The Act of February 24 is itself unconstitutional. The chapter which it attempts to amend concerns solely the organization of counties which have been created and formed but remain unorganized. The amendatory statute is open to the constitutional objection that it contains more than one subject. (Allardt v. People (Ill.), 64 N. E. 533; Grand Rapids v. Burlingame, 53 N. W. 620; Skinner v. Wilhelm, 30 N. W. 311.)

In effect the question in this case has been decided in Commr's v. Perkins, 5 Wyo. 166. In that case it is held that there is a distinction between creating and organizing a county, and it is said that the Legislature creates the county by its own enactment, and it was held in that case that Big Horn County was created by the act of the Legislature before the adoption of the Constitution, and that therefore the county could be organized after the Constitution took effect without a vote upon the question of division of the parent counties. The Legislature is required to provide by general law for organizing new counties, while the creation or formation of a new county must be by special act. The Act of February 24th is therefore clearly obnoxious to the constitutional objection that it contains more than one subject, for it provides for the creation as well as the organization of counties. (*In re* Werner, 125 Cal. 567; Schaffner v. Young (N. Dak.), 86 N. W. 735; State v. Merri-

mer, 6 Wis. 17; State v. Elwood, 11 Wis. 17; State v. Maryland, 6 Wis. 14.)

*Herbert V. Lacey, John W. Lacey* and *C. W. Burdick,* for defendants.

The difference between counsel in this case is largely one of definition. On the part of defendant it is denied that the creation of Park County by the Legislature is itself a division of Big Horn County under the Constitution. The election upon the question of division which is required by the Constitution in the case of the division of the county does not pertain to the creation or formation of the county, in the sense of the Constitution, or in the sense in which those words were used in the opinion in the case of Commissioners v. Perkins, cited by counsel for the plaintiff. We deny that the election on the question of division is an essential step or any step in the creation of the county. The vote on division is not a legislative function, but administrative, and being so it cannot be a part of the work of creating or forming the county. Reading the Constitution in the light of our history and together with the statutes here under discussion is all that is necessary to defeat the contentions of the plaintiff. Two things are mentioned in the section of the Constitution here pertinent. One is the creating or forming the county, the other organizing it. The only portion of the section which relates to the creation or formation of new counties by the Legislature is the first five lines of the second sentence of the section. The Legislature is left with full and absolute power and authority to form new counties, with the sole restriction that no new county shall be formed unless it shall contain within its limits property of a certain value, and unless the remaining portion of the old county or counties shall each contain property of a certain value. It seems to be conceded that no part of this work of creating or forming a new county can be delegated. It seems also to be conceded that the very nature of the case requires that laws passed for the creation of new counties shall be special and not general.

Each new county must have a name and boundaries which apply only to itself, and therefore it is impossible to create the county by a general statute. The methods of organizing the new counties on the other hand can be the same in all, and therefore the Constitution has provided that provision shall be made by general law for organizing new counties. The section of the statute above referred to places some restrictions upon the organization of counties, which need not here be discussed. It is clear that the Constitution distinguishes between the creation on the one hand and the organization on the other of a new county. No single restriction provided for in the Constitution as to either applies to both. Several counties before the adoption of the Constitution had been created, and for some time after they were created remained a part of the counties from which they were respectively taken, and at a later period the organization was had which separated or divided the original counties. It has been a fundamental principle in Wyoming that a county can be created and remain an unorganized county without in any way affecting its relation to the parent county.

A county is not divided in a constitutional sense by the creation of a new county embracing part of its territory. The division is a part of the organization of the new county. Such division being by the Constitution not a legislative function is entrusted to the voters of the new county. If no machinery had been provided by law for dividing the county by the vote required, then Park County would continue to exist as a created county but unorganized and a part of Big Horn County. One of the statutes in question provides for nothing more than the creation of the county. The other statute provides the method whereby the new county may be organized and the division of the old county accomplished through the vote of the electors in the territory proposed to be cut off. The first statute relates purely to the creation of the county. The second Statute relates merely to the matter of organization.

Every presumption is in favor of the validity of the leg-
islative acts and all doubts must be in favor of such validity.
To be held invalid the statute must appear to be plainly
and manifestly in conflict with the Constitution. (Cooley
Const. Lim., 216; Hare's Am. Const. Law, 704; Black's
Const. Law, 61.)   If, therefore, it should seem that it
was awkward for the Legislature first to designate the boun-
daries and give the name to the new county, and then, with
such boundaries and name designated, permit the people of
the new county to vote upon the question whether it shall
cease to be a part of the old one and be divided from it,
that would, we think, be not sufficient to cast a doubt upon
the validity of the legislation.   Even though it should seem
that the Legislature might have dealt with the matter in a
different manner that should not necessarily cast a doubt
upon the legality of the act.   It is, to say the least, not cer-
tain beyond a reasonable doubt that the Legislature having
all power as to the creation of Park County, save as re-
stricted by the Constitution, might not itself define the
boundaries and name the county, and then leave it unsep-
arated from the original county until the people should vote
upon the question, not of the erection of some county that
some one or some of the people might choose, but of the
county defined and designated by the Legislature in its
wisdom, and making the affirmative vote act as the division
of the county in accordance with the constitutional terms.
If this latter method is not so clearly violative of the Con-
stitution as to be in conflict with that instrument beyond a
reasonable doubt, then the method having been chosen must
be approved by the courts as valid.

The rule of interpretation last above cited is applicable
as well to the question of plurality of subjects as contained
in the objections of the plaintiff to Chapter 75 of the Act of
1909.   The constitutional provision prohibiting a plurality
of subjects in a single bill has for its purposes:   First, to
prevent what is called "log-rolling legislation" or "omnibus
bills."   Second, to prevent surprise and fraud upon the

people and the Legislature by including provisions in a bill
whose title gives no intimation of the nature of the proposed
legislation, or of the interests likely to be affected thereby.
Hence, in deciding whether an act is obnoxious to this pro-
vision of the Constitution, a good test to apply is whether
it is within the mischiefs intended to be remedied. Again,
while the provision is mandatory, it is to be liberally and
strictly construed. It should not be so construed as to em-
barrass legislation, or to prevent the Legislature from em-
bracing in one act all matters properly connected with one
general subject. (Johnson v. Harrison, 47 Minn. 575; *In re*
Sugar Notch Borough, 192 Pa. St. 349; *In re* Pinkney, 47
Kan. 89; Bridge Co. v. Attica, 119 N. Y. 204; People v.
Gaslight Co., 205 Ill. 482; Cook v. Marshall Co., 119 Ia.
384; *In re* Fourth Jud. Dist., 4 Wyo. 132; St. Paul v.
Lamprecht, 88 Fed. 449, 451; Detroit v. Ry. Co., 184 U. S.
368.) It cannot be said that there was anything misleading
in Chapter 75 which amended certain sections of the stat-
utes relating to the organization of counties, or that more
than one general subject was contained within the Act.

SCOTT, JUSTICE.

This cause comes to this court on reserved questions in
an action instituted in Big Horn County to enjoin the de-
fendants from proceeding to organize Park County which
was formed from a part of the territory included in Big
Horn County by an Act of the Legislature approved Febru-
ary 15, 1909, and which appears as Chapter 19, S. L. 1909.
The constitutionality of that Act is assailed. The questions
are as follows:

1. The proposition to divide the County of Big Horn
not having been submitted to, or voted upon by, the quali-
fied electors of the territory proposed to be cut off, on or
prior to February 15, 1909, and House Bill No. 20, approved
on that date, containing no provision for such submission or
vote, did such Act operate to create the County of Park?

2. Under the circumstances recited in question 1, is
the Act to create and form the County of Park unconstitu-

tional and void for failing to comply with the requirement of Section 2 of Article XII of the Constitution that "no county shall be divided unless a majority of the qualified electors of the territory proposed to be cut off voting on the proposition shall vote in favor of the division?"

3.   Was and is said Act valid and operative to any extent in the division of the County of Big Horn or the creation of the County of Park, and if so to what extent?

4.   Is House Bill No. 19, approved February 24, 1909, unconstitutional because containing more than one subject?

5.   If House Bill No. 20, above referred to, was unconstitutional when approved, could and did House Bill No. 19 give validity to the same by supplying the provision for submitting the question of division to the qualified electors of the territory proposed to be cut off?

6.   Is the provision of House Bill No. 19 for submitting the question of division to the qualified electors unconstitutional and void for the reason that it is not germane to the subject matter of Chapter 3, Division 1, Title 10, Revised Statutes of 1899, purported to be amended by said House Bill 19?'

7.   Is injunction as prayed for in this case under the facts set out in the petition, an admissible and proper remedy in case said Acts or either of them should be held by the Court to be unconstitutional and inoperative to divide the County of Big Horn and create the County of Park?

8.   Is the provision of Section 1, of said House Bill No. 19, for having the electors "choose a location for a county seat for said new county" unconstitutional and void because not expressed in the title of the Act?

9.   Does the last sentence of Section 2 of Article XII of the Constitution apply to the case of the creation of Park County out of territory taken from Big Horn County?

10.   In case the last sentence of Section 2 of Article XII of the Constitution applies here, does it require that the vote of the electors shall be taken before the Legislature shall

designate the boundaries of the proposed new county, Park County?

11.  In case the last sentence of Section 2 of Article XII of the Constitution applies here, will it satisfy that provision if the vote of the electors as there provided for is taken at any time in the process of creating and organizing the new County of Park and separating it from Big Horn County without reference to the order of time in which the vote is taken?

12.  In case the last sentence of Section 2 of Article XII of the Constitution applies here, was it required that the statute creating the new County of Park and defining its boundaries should itself contain the provisions for submitting the question to the electors within the new County of Park as provided in said Section 2?

13.  In case the last sentence of Section 2 of Article XII of the Constitution applies here, was it sufficient that the provisions for submitting the question to electors as required in that sentence were made in an act passed after the approval of the act creating Park County and defining its boundaries?

14.  Does House Bill No. 19, approved February 24, 1909, as enacted by the Legislature of Wyoming, constitutionally provide for an election by the proper electors to determine whether the new county shall be organized as applied to Park county?

15.  Do House Bill No. 20, approved February 15, 1909, and House Bill No. 19, approved February 24, 1909, as enacted by the Legislature of Wyoming, constitutionally provide for an election by the electors within Park County to determine the question whether or not the County of Park shall be organized?

16.  If an election was called and held in accordance with Chapter 3 of Title 10 of Division 1 of the Revised Statutes of 1899, and with House Bills Nos. 19 and 20 in Park County and at that election a majority of the electors of Park County lawfully cast their ballots in favor of the or-

ganization of that county and this result was duly canvassed and declared, is the creation and organization of Park County void by reason of the provisions of the last sentence of Section 2 of Article XII of the Constitution, or by reason of any other constitutional provision or provisions?

The plaintiff on its brief has resolved all the questions into two principal ones as follows: "First, did the above mentioned ace (House Bill No. 20) upon its passage become operative to create or form the County of Park? Second, if not, did it afterwards by force of the act approved February 24, 1909 (Chap. 75, page 118, S. L. 1909), become operative to create or form such County of Park?"

It is contended that Chapter 19, S. L. 1909, is in conflict with Section 2 of Article XII of the Constitution. That section is as follows:

"Sec. 2. The Legislature shall provide by general law for organizing new counties, locating the county seats thereof temporarily and changing county lines. But no new county shall be formed unless it shall contain within the limits thereof property of the valuation of two million dollars, as shown by the last preceding tax returns, and not then unless the remaining portion of the old county or counties shall each contain property of at least three million of dollars of assessable valuation; and no new county shall be organized nor shall any organized county be so reduced as to contain a population of less than one thousand five hundred bona fide inhabitants, and in case any portion of an organized county or counties is stricken off to form a new county, the new county shall assume and be holden for an equitable proportion of the indebtedness of the county or counties so reduced. No county shall be divided unless a majority of the qualified electors of the territory proposed to be cut off voting on the proposition shall vote in favor of the division."

The alleged conflict is with that part of the section which provides that "no county shall be divided unless a majority of the qualified electors of the territory proposed to be cut off voting on the proposition shall vote in favor of the di-

vision." At the time the Act was passed no vote had been taken on the proposition to divide Big Horn County. The provision of Section 6 of the Act is that the Act shall take effect and be in force from and after its passage, and by Section 1 it is enacted "That all that portion of the State of Wyoming described and bounded as hereinafter in this section set forth is hereby created and formed a county of the State of Wyoming by the name of Park County," and then defines the boundaries. Sections 3, 4 and 5 of the act are as follows: "Sec. 3. After said County of Park shall have organized and shall have duly chosen its county officers as provided by law, and the said county officers shall have qualified, the said county shall thereafter and until otherwise provided by law, constitute a portion of the Fourth Judicial District, and one term of court shall be held therein annually at the county seat upon such date as shall be fixed and specified by the presiding Judge of said Fourth Judicial District, proper notice thereof to be given by publication in at least one newspaper published at the said county seat of the said county, which said notice shall be published not less than thirty days before the date set for the opening of the said term of court.

"Sec. 4. After said County of Park shall have organized as provided by law, and until such time as a new census shall have been taken in the State of Wyoming by the said state, or the Federal government, and the Legislature upon the basis of such census shall have fixed the legislative representation of the several counties of the State, the said County of Park shall continue to be attached to and constitute a part of the County of Big Horn for the purpose of legislative representation.

"Sec. 5. All acts and parts of acts in conflict herewith are hereby repealed."

It appears that subsequent to the passage of this act an election was held in pursuance of Chapter 75, S. L. 1909, a subsequent act approved February 24, 1909, entitled "An act to amend and re-enact Sections 1007 and 1008 of the

Revised Statutes of Wyoming, 1899, relating to the organi-
zation of counties and providing for submitting the question
of division of counties to the qualified electors of the terri-
tory proposed to be cut off, and paying the expense of such
submission." By such election a majority of the electors of
the new county voted in favor of division.

The constitutionality of Chapter 19, *supra,* turns upon the
meaning of the words "created" and "formed" as used in
that act. The constitutional inhibition involved in the re-
served questions is against the division of a county unless
upon a majority vote of the electors of the territory pro-
posed to be cut off. If the words "created" and "formed"
as used in the act are to be construed so as to effect an im-
mediate division of Big Horn County then the Act was
unconstitutional. Those words must be construed in the
light of the limitations of the Constitution and those con-
tained in the Act itself. Sec. 2 provides that, "Until such
time as the said County of Park shall have organized and
elected county officers, as provided by law, and the said offi-
cers shall have qualified as such, all such portions of said
county as at the time of the passage of this Act belong to
or are a part of Big Horn County for judicial, revenue and
election purposes, including the representation in the Legis-
lature, shall be attached to and constitute a part of said Big
Horn County". It cannot be said upon the provisions of this
section that the Legislature intended by the use of the words
"created" and "formed" as used in Section 1 of the Act, to
immediately divide Big Horn County. In view of the pro-
visions of the act and the constitutional inhibition such in-
tention is not deducible from the language of the act
taken as a whole. The law is not nor does it purport to be
self-enacting in that respect but was evidently intended to
provide a way or method under the Constitution whereby
division of a county could be accomplished. The meaning
of the words "created" and "formed" are thus limited by
other provisions of the act. This court takes judicial notice
of the fact that these words or their equivalent have been

used by the Legislature before and since the adoption of the Constitution with reference to the creation of these political subdivisions. It was provided by Section 47, Chap. 80, S. L. 1888, "That all unorganized counties within this territory the boundaries of which shall be defined at this or subsequent sessions of the legislative assembly shall be organized as provided in this act." Section 1 of the act of the Territorial Legislature with reference to the creation of Weston County says: "All that portion of Wyoming Territory bounded and described as in this section set forth is hereby created and made a county of the Territory of Wyoming under the name of Weston County", and then defines the boundaries. (Chap. 47, S. L. 1890.) The same language is used in Section 1, Chap. 48, S. L. 1890, with reference to the creation of Big Horn County. It was, however, provided in the act that it should not be organized prior to 1892. This act was approved March 12, 1890, and it is a matter of history that Big Horn County remained unorganized until 1896. In all the Acts where these words have been used they have been limited in their meaning in the Acts themselves and were never treated as effecting a division *in presenti*.

The affirmative vote required by the Constitution is upon the question of division, and is a part of the process of organization. It is not upon the question of defining the boundaries and giving a name to an unorganized county. Indeed the latter question is one for the Legislature and cannot be delegated. Section 1 of Chapter 48 of the Session Laws of Wyoming of 1890 reads as follows: "That all that portion of the Territory of Wyoming described and bounded as in this section hereafter set forth, is hereby created and made a county of the Territory of Wyoming by the name of Big Horn", and then defines the boundaries. This act was construed by this Court after the adoption of the Constitution, in Commissioners v. Perkins, 5 Wyo. 166, 172, and in that case the meaning of the word "created" as used in the Act, and the word "formed" as used in the Constitution

with reference to counties was also discussed. The Court said: "Certain conditions are specified under which a new county may be 'formed" Other and different conditions are specified under which a new county may be 'organized.' The Constitution thus makes a distinction between forming a county and organizing one. It is similar to the distinction made by the act of 1890 between creating and making a county and organizing one. It seems clear that both before and since the adoption of the Constitution the creation or making or formation of a county was and is a legislative function; but the organization of a county is not and never was. The Legislature can and must, when a new county is to be made, and organized, give it a name and define its boundaries. But the organization of such county is a matter of administration and can be effected only by administrative or executive officers". The distinction between the creation as a legislative function and organization of a county as an act of administration is thus shown. The Legislature has also recognized this distinction, for Section 1, Chap. 59, S. L. 1895, provides for the organization of counties which have been or may thereafter be created and formed, but which remain unorganized. The first sentence of Section 2 of Article XII of the Constitution above quoted provides "That the Legislature shall provide by general law for organizing new counties, locating county seats temporarily and changing county lines". There can be no new county to organize until it has been created and formed in so far as the Legislature has power to do so. The creation of an unorganized county is a legislative function. The organization is administrative. By the act in question the Legislature did exactly what it had a right to do, and if by reason of the non-existence of further statutory provisions rendering it impossible to constitutionally divide the old county by organizing the new one, that would not of itself render the act void. Park County was created by legislative enactment, that is to say, it was given a name and its boundaries were fixed to remain so until otherwise

changed by law and the Act was binding on the people within
its boundaries for the purpose of organizing such county,
and as a condition precedent and as a step in such organiza-
tion a majority vote in favor of division by the electors of
such new county was required.

The act does not fall as coming within the inhibition of
the Constitution as to special legislation. The. Constitution
contemplates the creation of new counties. Such creation
is not inhibited. The fixing of the boundaries and giving it
a name is necessary to the creation of a new county. That
is a legislative function (Commissioners v. Perkins, *supra*,)
and the act of itself taken as a whole does not nor can it
alone operate to divide Big Horn County. The whole Act
is in the nature of an enabling act and it is left to the choice
of the electors of the new county as to whether they will
avail themselves of the right to organize under the provision
of the Statute relating to that subject and thereby separate
from the parent county. The vote is not upon the boun-
dary, but is upon the question of division and constitutes a
step only in the matter of the organization. If a majority
of the electors vote in favor of division and the other re-
quirements of the Constitution and laws are complied with,
and they proceed to organize the county government in ac-
cordance with law, then and not until then, as stated in
Commissioners v. Perkins, *supra*, does the creation of the
county become effective for the only purpose of its crea-
tion. (Buckingham v. Gregg, 29 Ind. 401; Milk *et ux.* v.
Kent, 60 Ind. 226; People v. McGuire, 32 Cal. 140.) It
may work a division of the parent county, but such county
would then be divided by virtue of a compliance with the
provisions of the Constitution.

Such legislation is necessary to our form of government.
No other way is pointed out whereby a county can be cre-
ated, except by legislative enactment giving it a name
and defining its boundaries. The Act must be upheld as
being in the nature of an enabling act to the people residing
within the defined boundaries of the territory therein de-

scribed, to organize the County of Park under the general Statute contemplated by the Constitution. In that sense alone the Act created and formed the County of Park, but it did not of itself work a division of Big Horn County. We are of the opinion that the act is not repugnant to the provisions of the Constitution and that it took effect from and after its passage. To the reserved questions numbered respectively 1, 9, 11, 13 and 15, the answer is "Yes". To questions numbered respectively 2, 10 and 12, the answer is "No".

It is contended that the County of Park cannot be constitutionally organized, and in support of such contention it is claimed that there is no general law applicable to its organization. The Legislature acting under the provision of the Constitution in 1895 enacted a general law for the organization of new and unorganized counties. (Section 1002 to Section 1012 inclusive, R. S. 1899.) Section 1002 as originally enacted (Sec. 1, Chap. 59, S. L. 1895) reads as follows: Any county heretofore or hereafter created and formed but which remains unorganized may be organized as provided in this act." The word "heretofore" has been omitted from the section as it appears in the revision without any apparent legislative authority. It should be read as originally enacted. Without this word, however, the word "hereafter" would necessarily be construed as applying to any county created after the passage of the act of 1895, from which the section is taken. Section 1005 provides for the appointment by the Governor upon petition of three Commissioners to organize the county. Section 1006 relates to the oath to be taken by the persons so appointed. Section 1007 gives them authority to designate a place for the transaction of their official duties and to appoint a Clerk. Section 1008 provides that an election shall be held at the next general election in the same manner as if the county were organized, for national, state, county and precinct officers. Section 1009 prescribes the duties of the commissioners and clerk so appointed in conducting the election

in the same manner as though they were commissioners and county clerk respectively of an organized county. Section 1010 provides that the county and precinct officers so elected shall qualify on the first Monday of January next following such election, and when two of the county commissioners so elected have qualified in accordance with law, the county shall be "deemed and held to be organized and vested with all the powers of an organized county under the laws of the state." It may be conceded that this statute was inoperative with reference to the organization of a new county since the adoption of the Constitution as it did not provide for submitting the question of division to the electors of such county. There is a distinction between a statute which is inoperative and one which is repugnant to the Constitution. It is true that Section 1002 provides that a new county may be organized as in that chapter provided. It is equally true that Park County in the absence of any provision for a vote on division could not be so organized at the time it was created. The statute, however, with reference to the organization of new counties provided all the steps necessary to perfect the organization of a county created and formed except the vote on division. The statute was not wholly repugnant to the Constitution. It was constitutional as far as it went. By House Bill No. 19 (Chap. 75, S. L. 1909), Section 1007 was amended and re-enacted so as to read as follows: "Section 1007. Such Commissioners shall then appoint a clerk who shall take an oath to the effect that he will faithfully and impartially discharge the duties of his office as prescribed by law, and also the oath required of a county clerk. The commissioners shall at the same time designate a place for the transaction of their official duties, and shall, immediately, in the manner now prescribed by the laws of Wyoming for holding special elections for county and precinct officers, call and arrange for a special election for the purpose of submitting to the qualified electors of the territory proposed to be cut off, the question of whether said qualified electors are in favor of division.

At the same time said electors shall in like manner choose
a location for a county seat for said new county. Provided,
however, That said Commissioners may call and arrange for
such special election, coincident with any general election."

Section 1008 was amended and re-enacted so as to read
as follows:

"Section 1008. If a majority of the qualified electors re-
siding in the territory proposed to be cut off vote in favor
of division, then said new county shall be organized, and
at the next general election, or in case said special election
was called coincident with a general election, then at such
general election said qualified electors residing in said new
county shall in the manner provided by law, vote for a mem-
ber of Congress, State and District officers, and shall at such
election elect the members of the Senate and House of Rep-
resentatives of the State to which said county is entitled,
and also the county and precinct officers provided for by
law."

The amendment and re-enactment was clearly within the
power of the Legislature and the Act then became operative
(Lewis' Sutherland on Stat. Const., page 437) and we
think it was the intention of the Legislature that the Act
should apply to any new county which had been created
and formed in so far as the Legislature could by legislative
enactment create and form such county, and that for that
reason it applied to the unorganized County of Park. It
was introduced at or about the same time as H. B. No. 20
(Chap. 19, S. L. 1909), and being practically contempora-
neous shows such legislative intent. Sections 1007 and 1008
were amended and re-enacted as above set forth, so as to
provide for submitting to the qualified electors of the terri-
tory proposed to be cut off from the parent county the ques-
tion of whether such qualified electors are in favor of di-
vision. This statute is general. We also think it clear
that the vote upon division must be subsequent to the act
of the Legislature creating and forming such county. The

Constitution only provides that division shall not be accomplished in the absence of such vote.

The constitutionality of House Bill No. 19 (Chap. 75, S. L. 1909) is also brought in question by interrogatories Nos. 4 and 6. It is urged that it contains more than one subject, and is therefore repugnant to Section 24 of Article III of the Constitution, which is as follows:

"Sec. 24. No bill, except general appropriation bills and bills for the codification and general revision of the laws, shall be passed containing more than one subject, which shall be clearly expressed in its title; but if any subject is embraced in any act which is not expressed in the title, such act shall be void only as to so much thereof as shall not be so expressed."

Chapter 75, as already stated, is an amendment to Chapter 3, Division 1, Title 10, R. S. enacted in 1895 (S. L. 1895, Chap. 59), and which chapter treats solely of the organization of counties, and Section 1 of the Act (1002 R. S.) provides for the organization of a county which has theretofore or which may thereafter be created and formed but which remains unorganized. Up to the time of the enactment of Chapter 75 (Feb. 24, 1909) no method had been provided by statute for submitting the question of the division of a county to the electors as required by the Constitution. By that chapter provision is made for holding an election for that purpose. It is urged here again that the creation is accomplished, if at all, by the vote on division, and upon such theory it is contended that the act provides not alone for the organization of a new county, but for its creation. We have held contrary to this contention in another part of this opinion. The vote upon division must be conducted by administrative or executive officers, and as we have already said, such elections must be held as a step precedent to and as a part of the final organization. The Act is general and the subjects embraced therein are cognate and relate to the same general subject. The locating of the county seat temporarily is a part of the organization

of the county.. The "organizing of new counties, locating the county seats therein temporarily, and changing county lines" are all included under the same general subject of organization and may, whenever thought more convenient, be included in the same act.  Such location of the county seat is temporary and for the purpose of organization and to remain until otherwise changed in accordance with law. So considered, the subject matter of the act resolves itself into one single subject with different steps provided for, and each and all leading up to one common purpose of the act, viz, organization.  The amendment, so considered, is germane to the single subject of the law amended thereby. The answer to each of the questions 4 and 6 is "No".

Without discussing the other questions at length, as we think the conclusions reached with reference to House Bills 19 and 20 (Chapters 19 and 75, S. L. 1909) are controlling as to the answers to the other questions, we will take them up and answer them as we deem proper upon the record. To question 3 our answer is "yes".  As already stated the Act is valid to the extent of creating a new and unorganized county.  To question 8 the answer is "No".

Question No. 5.  This question need not be answered as we hold that the Act is constitutional.

To question No. 7, we return no answer.  The question relates to a matter of procedure and presents no constitutional question.

Our answer to question 14 is "yes".  It is a general act and relates to organization of new counties.  Having held that the act creating and forming Park County is constitutional it could be organized under a subsequent general act providing a method of organization of new counties.

In answering question 16, if the election therein referred to was upon the question of a division of the county as we assume it to have been, then the creation and organization of Park County would not be void if the other steps in organization are properly taken as required by law, by reason of the last sentence of Sec. 2 of Article XII of the

·Constitution, or by reason of any other constitutional provision to which the attention of this court has been directed; and so understanding the question, we answer it "No."

The answers to the reserved questions as herein given will be certified to the District Court of Big Horn County wherein the action is pending.

POTTER, C. J., and BEARD, J., concur.

ON PETITION FOR REHEARING.

BEARD, JUSTICE.

Counsel for plaintiff have filed a petition for a rehearing in this case; and in their brief in support of the petition they contend that the decision handed down February 10, 1910 (Advance Sheets, 106 Pac. 923), is in conflict with the decision in Board of Commissioners v. Perkins, 5 Wyo. 166; because the Court in that case in answer to the sixth ·question there submitted said: "Fremont, Johnson and Sheridan Counties were divided by the Act of 1890. No vote was necessary." From this it is argued that when the Legislature created the County of Park, defining its boundaries and giving it a name, Big Horn County was thereby ·divided, according to the decision in the Perkins case; and that the Legislature had no power to divide a county without the vote provided for in the Constitution.

We think counsel overlook the fact that at the time the .Act of 1890 creating Big Horn County was passed, there was no constitutional provision prohibiting the Legislature ·from dividing a county by creating a new county out of part ,·of its territory. That is, the Legislature had the power to ·do everything necessary to the complete establishment of a new political subdivision of the state and the establishment ,of a county government over the territory embraced within the new county so created, except the election of its officers .and the selection of its county seat. When the new county .and the county or counties from which its territory was ·taken, possessed the necessary qualifications as to population

and property, whether at the time of its creation or after-
wards, it could proceed upon the petition of three hundred
electors, qualified as the law required, to elect its officers and
select a county seat, and thus establish its county government,
whether the majority of those residing within the territory
desired to do so or not.   But since the adoption of the Con-
stitution, counties thereafter created can proceed to the es-
tablishment of such new county government only by consent
of a majority of the qualified electors residing within the
limits of the proposed new county voting upon the question.
To otherwise state it, under the provisions of the Constitu-
tion it now requires both the act of the Legislature and the
vote to accomplish what, prior to that time, the Legislature
could and did do in the matter of Big Horn County.   As
one step in the establishment of a separate county govern-
ment over the territory embraced within the new but unor-
ganized county, three hundred electors may still petition
therefor, but further steps in the organization shall not be
then taken unless authorized by the vote provided for by the
Constitution.   The question in the Perkins case was not the
same question presented in this case.   In that case prior to
the adoption of the Constitution, Big Horn County had been
created but remained unorganized until afterwards.   Every-
thing had been done which the law then required to be done
to invest it with all the powers, rights and duties of a sepa-
rate county government with full and complete jurisdiction
over its territory, separate from and independent of the
counties from which its territory was taken, except to elect
its officers and select its county seat; and the question was,
as stated by the court, "Can Big Horn County now be le-
gally organized?"   It was held that "Because Big Horn
County has not the population required it cannot now be
organized."   It was further held that when it had acquired
the requisite population it could proceed to organize under
the act creating it, without a vote.   The question in the
case before us is whether Chapter 19, S. L. 1909, creating
Park County, violates the constitutional provision that "no

county shall be divided unless a majority of the qualified electors of the territory proposed to be cut off voting upon the proposition shall vote in favor of the division." If, as said in the opinion, the act is to be construed as effecting an immediate division of Big Horn County, then it is unconstitutional. In determining the true meaning of the language used and the proper construction to be placed upon the act, so as to arrive at the intent of the Legislature, it must be considered in connection with the constitutional provisions and contemporaneous legislation with reference to the same subject. We should not attribute to the Legislature an intent to violate the plain language of the Constitution, as would be the case had it been intended by the act in question to attempt to divide Big Horn County without the required vote. That such was not intended, we think, clearly appears by Chapter 75, S. L. 1909, enacted at the same session of the Legislature, wherein the method for taking such vote is provided. By that act the Legislature recognized the limitation placed upon its powers by the Constitution with reference to the division of existing counties in the creation of new counties and practically put its own construction upon Chapter 19, creating Park County. The vote on the question of division has been taken, the majority being in favor of division, and, as we have already stated, the law as it is now written requires both the act of the Legislature creating the county and the vote on the question of division to accomplish what the Legislature had the power to do and did do in the matter of Big Horn County as the law then existed, whether the vote on the question of division be regarded as a step in the creation or in the organization, or as an intermediate step between "creation" and "organization," now required by the Constitution. Keeping in mind this change made in the law by the Constitution, we think there is no conflict between the decision in the Perkins case and the opinion handed down in the case at bar.

That being the only question presented by the petition for rehearing, a rehearing is denied.

                                        *Rehearing denied.*

Potter, C. J., concurs.

Scott, J., being absent, did not take part in the consideration of the petition for rehearing.