# BUDGE, ET AL. v. BOARD OF COM'RS OF LINCOLN COUNTY, ET AL.

### (No. 1108; Decided July 29, 1922; 208 Pac. 874)
### (Re-hearing denied Sept. 26, 1922)

COUNTIES—CONSTITUTIONAL LAW—LEGISLATIVE POWERS—PROPERTY VALUATION AND POPULATION REQUIRED FOR NEW COUNTY—APPEAL AND ERROR—RESERVED CONSTITUTIONAL QUESTIONS—STATUTES— AFFIDAVIT REQUIRED FOR ORGANIZATION OF NEW COUNTY.

1. Laws 1921, c. 53, in so far as it undertakes to form Teton county is constitutional, using the word "form" in the sense employed by the Constitution.

2. Under Const. art. 3, § 1, providing that legislative power shall be vested in a senate and house of representatives, the legislature may pass any acts that are not expressly or by necessary implication inhibited by the state Constitution or the United States Constitution.

3. Article XII, Section 2 of the Constitution authorizing general legislation for the organization of new counties but prohibiting the formation of a new county unless it contains property of the valuation of $2,000,000.00 and at least 1,500 bona fide inhabitants are minimum limitations as to property value and inhabitants below which the legislature cannot pass but the legislature has power to provide that counties shall not be formed or organized unless they measure up to requirements in excess of those demanded by the Constitution.

4. On reserved constitutional questions, where answer to one question renders the other questions not primary constitutional questions, they will not be decided.

5. On reserved constitutional questions where the answer to one question as to the constitutionality of a statute necessarily involves a determination of its repeal of another statute by apt language, it is improper for the Supreme Court to respond until the question of repeal has been first determined by the District Court.

6. Courts do not pass upon the constitutionality of a statute unless the necessity therefor in an instant case clearly appears, and will not consider questions which can only be reached after action by the District Court, and which are not constitutional.

7. Comp. St. 1920, §§ 1279-1281, are a valid exercise of legislative power to provide by general law for the organization of new counties, under Const. art. 12, § 2.

8. The legislature has a right to provide by general law a minimum population and a minimum assessed valuation as a condition precedent to the organization of a new county in excess of the minimum provided by Const. art. 12, § 2.

9. Under Const. art. 12, § 2, giving the legislature power to provide by general law for the organization of counties, and that a new county shall not be formed unless it contains property of the valuation of $2,000,000 and a population of 1,500 bona fide inhabitants, Comp. St. 1920, §§ 1279-1281, providing that before a new county can be organized it must have a population of 3,000 inhabitants and property of the value of $5,000,000, are not unconstitutional because requiring a minimum of property and population in excess of the minimum required.

10. Comp. St. 1920, §§ 1279-1281, requiring an affidavit setting forth that the new county has 1,500 bona fide inhabitants and $5,000,000 assessed valuation to be attached to the petition for the appointment of organization commissioners, is a valid exercise of the right of the legislature to provide by general law for the organization of new counties under Const. art. 12, § 2, giving the legislature power to provide by general law for the organization of new counties, and requiring a minimum of property in such counties amounting to $2,000,000 and a minimum population of 1,500.

CERTIFIED questions from the District Court of Lincoln County; HON. JOHN R. ARNOLD, Judge.

Action by James Budge and others against the Board of County Commissioners of the County of Lincoln, and others. On reserved constitutional questions from the District Court. Answers to reserved questions to be certified to the District Court.

*Robert R. Rose,* for plaintiffs.

Ten reserved questions were presented involving but two general constitutional questions, the first is as to the constitutionality of the act creating Teton County, and the second is as to the constitutionality of certain sections of Chap-

ter 91 C. S. 1920 relating to the organization of new counties. The legislative power of the state is vested in a senate and house of representatives. (Art. III, Sec. 1.) The organization of new counties is authorized by general law, but the formation of a new county is not permitted unless it contains property valuation of $2,000,000.00 and not less than 1,500 bona fide inhabitants. The power of the legislature to provide for the creation and organization of new counties is general and subject only to such limitations and restrictions as are imposed by the constitution. (People v. Board, 30 L. R. A. 74.)

As to the formation of new counties there is but one restriction to legislative authority, viz: That the new county shall contain property of the valuation of $2,000,000 and a population of at least 1,500 bona fide inhabitants. Two restrictions are imposed as to the organization of new counties: First, that such organization shall be provided by general law; and second, that no new county shall be organized nor shall any organized county be so reduced as to contain a population of less than 1,500 bona fide inhabitants. Outside of these restrictions the legislature has general power and it may prescribe requirements as to valuation and population in excess of the minimum provided by the Constitution. It is a mandatory duty of the legislature to create new counties when necessary. (Sections 1279, 1280 and 1281 C. S. 1920 provide for county organization. The proposed county of Teton is lacking in the requisite population and assessed valuation required by Section 1281. No affidavit was filed in support of the petition for the appointment of organization commissioners.

Reserved questions 3, 4, and 6 must be answered in the affirmative; the first clause of question 5 also must be answered in the affirmative and the second clause thereof in the negative; question 7 must be answered in the negative. The governor has no authority to appoint an organization commission until a proper petition, as prescribed by statute, has been presented to him. Chapter 52 L. 1921 is special legislation and violates Section 27, Article III and

Section 2 of Article XII as well as Section 3 of Article I of the Constitution. The language of the chapter clearly indicates that it was to be of special operation notwithstanding the provisions of Section 1281 which is of general operation. The Teton County act might stand were it not for the provisions of Section 4 delaying the right of the new county to separate legislative and senatorial representation, which violates the Constitution. (Article XII, Section 3, Article XXI, Section 18.) The evident purpose of this section is to postpone separate legislative representation for the new county until enactment of a new apportionment law which rendered it invalid. (Dillman, Clerk v. Merrill (Wyo.) 125 Pac. 367.)

Teton County, even if legally created cannot now be organized for the following reasons: (a) It lacks the necessary 3,000 population; (b) it lacks the necessary $5,000,000 valuation; (c) the petition presented to the governor for the appointment of organization commissioners was not supported by proper affidavits as to the population and valuation of the new county. The act creating Teton County is special legislation and unconstitutional. The act as published (Ch. 53 L. 1921) does not contain a correct record of the law.

*P. W. Spaulding,* for defendant.

Two main propositions are presented by the reserved questions, viz: The right of the legislature to create and form Teton County, and the right of the governor and commissioners appointed by him to carry on their executive and administrative functions for the organization of Teton County whose valuations and population exceed the constitutional requirements but do not meet the added statutory requirements. Certain provisions of the Constitution seem to bear a vital relation to these questions: Article II Section 1, relating to the division of powers; Article III Section 27, prohibiting the enactment of special or local laws; Article IV Section 1, vesting executive power in the governor; Article XII Section 2, providing for the forma-

tion and organization of new counties by general law. The question of county division and organization has been before this court and clearly settled in a general way, except as to the proposition of the right of the legislature to prescribe requirements in excess of those vested in it by the Constitution. The cases are:

Commissioners v. Perkins, 5 Wyo. 166; Re: Apportionment, Big Horn and Fremont Cos. 8 Wyo. 1; State v. Schnitger, 16 Wyo. 489, 537; Commissioners v. Woods, 18 Wyo. 316; Dillman v. State, 20 Wyo. 404.

The requirements of Section 1281 C. S. 1920 as to the population and valuation required for new counties would not seem to be consoling for the following reasons: It is unconstitutional in prescribing provisions in excess of the Constitution, itself; if valid, it is not binding on subsequent legislation; the Constitution does not prohibit special acts for the organization of a county. The terms "create," "form" and "organize" there discussed have distinctions in the Wyoming cases above cited.

Article II Section 27 does not prohibit special legislation concerning creation, formation or organization of counties. The necessities of people within the territory comprising the new county of Teton were clearly understood by the legislature when it passed Chapter 53 L. 1921. It had authority to pass the act whether it be special or not. Article XII Section 2 of the Constitution requires general laws for the organization of counties, locating county seats or changing county lines. The creation, making or formation of a county has always been a legislative function,—the organization of a county is not, and never was. (Com'rs. v. Woods, 18 Wyo. 331; Dillman v. State, 20 Wyo. 423.)

The requirements of Section 1281 C. S. 1921 fixing population and valuation necessary for the formation of a county being in excess of the constitutional requirements, would seem to be void. (State v. Duncan, 265 Mo. 26.) Legislative acts for the formation and creation of new counties

are not special acts. (Com'r. v. Woods, supra.) It was clearly intended that Chapter 53 L. 1921 should repeal conflicting provisions of Section 1281 in so far as the creation of Teton County was concerned. All reasonable doubts must be solved in favor of the validity of the act. (State v. Schnitger, 16 Wyo. 526.) In construing a legislative act a literal interpretation involving extreme hardship or great injustice will be avoided, if possible. (12 C. J. 703.) The petition presented to the governor for appointment of commissioners met the requirements of the statute,—at least it was apparently so considered by the executive and the courts will not interfere. (People v. Drainage Dist., 103 Pac. 214.) If it be decided that Teton County is a county for all purposes and entitled to legislative representation, that can be accomplished by special election or by nominations prior to the general election. The point urged with reference to legislative representation cannot serve to invalidate the entire force and effect of Chapter 53 L. 1921. The agreed statement shows that the people within the territory of Teton County had no difficulty in determining the county boundaries. If there be uncertainty in the mind of counsel for plaintiffs as to the true boundaries of Teton County, we have statutory provisions for the location thereof on the ground. Clerical errors in description may be corrected. (15 C. J. 399.)

Questions 1, 3, 4, 5 (first part) and 6 should be answered in the negative and questions 5 (second part), 7, 8, 9 and 10 in the affirmative.

RINER, District Judge.

This action was brought in the District Court of Lincoln County by certain residents and tax-payers of that part of the County of Lincoln "within the boundaries of the proposed County of Teton." It seeks to enjoin the defendants, the Board of County Commissioners of the County of Lincoln, from making any special levy of taxes upon the property of the plaintiffs situate "within the proposed boundaries of the proposed unorganized County of Teton" for the

purpose of defraying expenses incurred and to be incurred relative to the organization of that County. An answer was filed by the defendants, W. P. Redmond, P. C. Hansen and T. R. Wilson, the commissioners appointed to organize the County of Teton, and by other defendants. To this answer the plaintiffs interposed a general demurrer. An agreed statement of facts was also filed, duly signed by counsel for both plaintiffs and defendants. Upon the submission of the cause constitutional questions arising upon the record were at the instance of all parties duly reserved and certified to this court for decision.

Teton County was formed from a part of the territory included in Lincoln County by an act of the legislature, comprising six sections, approved February 15, 1921. This law appears as Chapter 53, S. L. 1921. The first section of the act forms the county and indicates its boundaries; the second section attaches its territory for judicial, revenue and election purposes, including representation in the legislature, to Lincoln County "until such time as the said County of Teton shall have organized and elected officers as by law provided;" the third section attaches its territory to the Third Judicial District and provides for a term of court "after said County of Teton shall have organized and shall have duly chosen its county officers as by law provided;" the fourth section attaches its territory to Lincoln County for all purposes of legislative representation until that is fixed by the legislature on the basis of a new census "after said County of Teton shall have organized as provided by law;" the fifth section declares Teton County "shall be deemed and held to be one of the counties of Wyoming" from the passage of the act for all the purposes of which a county exists in this state "except as hereinbefore provided;" the sixth section declares that the act shall take effect and be in force from and after its passage. While the constitutionality of this act is assailed, it is sufficient for the purposes of this case to state in passing that we regard the act as constitutional in so far as it undertakes to form Teton County, using the word "form" in the sense employed by

the Constitution of Wyoming. In the case of Commissioners v. Woods, et al. 18 Wyo. 316 at 332, 106 Pac. 923, 927, this court, speaking of an act of the legislature forming Park County which was contended to be violative of constitutional provisions, said:

"Such legislation is necessary to our form of government. No other way is pointed out whereby a county can be created, except by legislative enactment giving it a name and defining its boundaries. The act must be upheld as being in the nature of an enabling act to the people residing within the defined boundaries of the territory therein described, to organize the County of Park under the general statute contemplated by the Constitution."

This language accurately describes the nature of the act forming Teton County. A clear distinction has been made by the decisions of this court between forming and organizing a county as contemplated by the Constitution and statutory enactments relative thereto. (Board of Commissioners of the County of Fremont v. Perkins, et al. 5 Wyo. 166, 38 Pac. 915.)

The legislature evidently had in mind such distinction, inasmuch as in the act it is repeatedly declared that certain conditions shall prevail until or after "said County of Teton shall have organized as provided by law."

From the pleadings and the agreed statement of facts it appears that the organization of Teton County was undertaken regardless of the provisions of Section 1281 of the Compiled Statutes of Wyoming 1920. It is conceded, as a matter of fact, that at the time of the signing and presentation to the Governor of the State of Wyoming of the petition provided for by Section 1280 of said Statutes, and at all times during the year 1921, the proposed County of Teton contained a population of one thousand six hundred and twenty bona fide inhabitants and no more, and property of the value of two million three hundred and thirty-five thousand dollars and no more as shown by the last preceding assessment for taxation. To avoid the force of this enactment of the legislature, it is contended on behalf of the

defendants that its provisions forbidding formation and organization of a new county unless the county possesses property of the value of five million dollars as shown by the last preceding assessment for taxation and a population of three thousand bona fide inhabitants are unconstitutional. The section thus challenged is a part of the general law passed by the legislature providing for the organization of counties in this State.

While the questions certified by the District Court are ten in number yet the question of the constitutionality of Section 1281 in the particulars mentioned is mainly all that this court can now properly decide.

Section 2 of Article XII of the Wyoming Constitution provides in part:

"The legislature shall provide by general law for organizing new counties, locating the county seats thereof temporarily and changing county lines. But no new county shall be formed unless it shall contain within the limits thereof property of the valuation of two million dollars, as shown by the last preceding tax returns, and not then unless the remaining portion of the old county or counties shall each contain property of at least three million of dollars of assessable valuation; and no new county shall be organized nor shall any organized county be so reduced as to contain a population of less than one thousand five hundred bona fide inhabitants."

It is urged that when the legislature in Section 1281 aforesaid increased the property valuation necessary for the formation of a county and the number of inhabitants for its organization over the constitutional requirements above recited, such action was in derogation of the state's Constitution. With this contention we are unable to agree.

. Section 1 of Article III of the fundamental charter of Wyoming reads:

"The legislative power shall be vested in a senate and house of representatives, which shall be designated 'The Legislature of the State of Wyoming.'"

In thus creating the legislative department and conferring upon it the legislative power the people of this State must be understood to have vested the full and complete power as it exists and may be exercised by the sovereign power of any country subject only to such restrictions as they may have seen fit to impose, and of course, to the limitations embodied in the federal constitution. In other words the legislative department of a state is not made a special agency for the employment of specifically defined legislative powers, but is intrusted with the general authority to make laws at discretion. The generally accepted doctrine is that under constitutional provisions similar to those of this State the legislature may ''pass any acts that are not expressly or by necessary implication inhibited,'' by the state or the United States Constitution (12 C. J. 746 and extended list of cases cited in Note 5).

This court has already announced this view of the law. In State ex rel. Agricultural College v. Irvine, 14 Wyo. 318 at 389, 84 Pac. 90, 106, it was said:

''The legislature is vested with all legislative powers of the state; it may do anything within the domain of legislation which is not repugnant to the State or Federal Constitutions; and constitutional restrictions upon the legislature are not to be enlarged by construction beyond their terms.''

The constitutional provision above recited declares that ''no new county shall be formed unless it shall contain within the limits thereof property of the valuation of two million dollars as shown by the last preceding tax returns'' and ''no new county shall be organized   *   *   *   as to contain a population of less than one thousand five hundred bona fide inhabitants.'' Applying the rule of construction indicated by this court in its decision above mentioned, it is plain the Constitution says to the legislative department: You may form counties as the needs of the state may require but your act is ineffective if it undertakes to form a county which does not have a property valuation of two million dollars as shown by the last preceding tax returns; you shall provide by general law the machinery whereby

counties may be organized but your machinery is ineffective if it allows a county to be organized which contains a population of less than fifteen hundred bona fide inhabitants. Recalling that *all* legislative power is vested in the legislature the limitations thus set by the Constitution are merely minimum limits below which the legislature cannot pass. Clearly then, this leaves the legislature with full power to provide that counties shall not be formed or organized unless they measure up to requirements in excess of those demanded by the Constitution.

In the case of Elder v. Doss, 202 Pac. (Cal.) 144 at 145 recently decided, the Supreme Court of California has discussed a quite similar situation thus:

"It was said in Los Angeles County v. Orange County, 97 Cal. 329, 331, 32 Pac. 316:

'Counties are merely local subdivisions of the state, created by the legislature for governmental purposes, and are denominated public corporations for the reason that they are but parts of the machinery employed in carrying on the political affairs of the state. *The legislature except as restrained by constitutional limitations, may change* their boundaries and extent, consolidate two or more into one, *or divide and create new counties out of the territory of one or more previously existing ones.*' (Italics ours.)

"At the time of this decision, as now, the only constitutional provision on the subject was Section 3 of Article 11 of the Constitution, which then simply provided that—

'No new county shall be established which shall reduce any county to a population of less than eight thousand; nor shall a new county be formed containing a less population than five thousand; nor shall any line thereof pass within five miles of the county seat of any county proposed to be divided.   *   *   *'

"These were prohibitions pure and simple, and, subject only to them, the power of the legislature in the matter of the creation of new counties by either general or special law (see Wheeler v. Herbert, 152 Cal. 224, 228, 92 Pac.

353; Mundell v. Lyons, 182 Cal. 289, 187 Pac. 950) was un-
limited.''

This rather extended quotation shows very well how the
courts regard constitutional limitations such as are here un-
der consideration. A great many authorities could be cited
to the same effect. A few only are here mentioned: (Nowa-
kowski v. State, 6 Okl. Cr. 123 (115 Pac. 351), Cherna v.
State, 146 Pac. (Ariz.) 494, State v. Weiss, 84 Kan. 165
(113 Pac. 388); State ex rel. Caldwell v. Hooker, 32 Okl.
712; Hawley v. Anderson, 190 Pac. (Ore.) 1097.)

It results from what has been said that Section 1281 of
the Compiled Statutes of Wyoming is a constitutional ex-
ercise by the legislature of the powers vested in it. This
conclusion disposes of the case except for the responses
needed to the questions certified by the District Court. These
questions will now be stated with such answers and remarks
as may be required under the conclusions reached in this
cause.

The first question reads as follows: ''Is Chapter 33 of
the laws of 1921 a special act, particularly in the use of the
words 'Notwithstanding the provisions of Section 1281,
Wyoming Compiled Statutes of 1920,' and therefore in con-
travention of (a) Sec. 27 of Art. III, or (b) Sec. 2 of Art.
XII, or (c) Sec. 34 of Art. I of the Constitution of the State
of Wyoming?'' To this question no answer is returned as
it is not proper at this time for this court to decide. The
constitutionality of Chapter 53 of the laws of 1921 as re-
gards whether it is a special act or not for the organization
of Teton County, which we understand to be the purport of
the question, may not arise in this case inasmuch as Section
1281 has been declared to be constitutional. The District
Court in disposing of the case will necessarily have to de-
termine first whether the section last mentioned has been
repealed by apt language in the provisions of Chapter 53
aforesaid. Until that is done and a conclusion reached that
a repeal has been intended, the constitutionality of Chapter
53 will not arise. It is a well settled rule that courts do not
pass upon the constitutionality of a statute unless the neces-

sity therefor in the instant case clearly appears. (Cooley Const. Lim. Sec. 163). This court has already ruled that it cannot consider questions which can only be reached after action by the District Court and which are not constitutional. (See State v. Kelly, 17 Wyo. 335, 98 Pac. 886).

In this connection it may be observed that it is significant in the history of the act as it traveled through the legislature, that the general repealing clause originally incorporated therein was before final passage stricken out, and that repeated reference is made in its several sections to conditions which shall prevail until or after the County of Teton shall have organized *"as provided by law."* Should the District Court reach the conclusion that no repeal has been accomplished then, of course, Teton County will remain unorganized until it can comply with Section 1281 already discussed.

To question number two, which reads: "If said Chapter 53, laws of 1921, is unconstitutional, are the proceedings thereunder as alleged in the pleadings and agreed to in the stipulated statement of facts, invalid and void?" the answer is, that under the answers returned to the other submitted queries this one does not present a constitutional question.

To question number three, which reads: "Are Sections 1279, 1280 and 1281, Wyoming Compiled Statutes of 1920, a valid exercise of the legislative power to provide by general law for the organization of new counties under Sec. 2 of Art. XII of the State Constitution?" the answer is "yes."

To question number four, which reads: "Has the legislature the right under the Constitution to prescribe by general law a minimum population and a minimum assessed valuation as a condition precedent to the organization of a new county in excess of the minimum prescribed by Sec. 2 of Article XII of the State Constitution?" the answer is "yes."

To question number five, embracing two questions, reading: "Assuming that the legislature has such right, are Sections 1279-1281, Wyoming Compiled Statutes of 1920, a valid exercise of the right of the legislature to fix a minimum

population and a minimum assessed valuation as a condition precedent to the organization of a new county in excess of the minimums prescribed by the State Constitution? And can Teton County be legally and constitutionally organized until it is able to comply with the requirements of the sections mentioned as to population and assessed valuation?" the response is "yes" to the first and the last not primarily involving a constitutional question is left without reply.

To question number six, which reads: "Are the provisions of Sections 1279-1281, W. C. S. of 1920, requiring an affidavit setting forth that the new county has 3000 bona fide inhabitants and $5,000,000 assessed valuation to be attached to the petition for the appointment of organization commissioners, a valid exercise of the right of the legislature to provide by general law for the organization of new counties as set forth in Sec. 2 of Art. XII of the State Constitution?" the answer is "yes."

To question number seven, reading: "Is the act of the Governor in appointing organization commissioners in the absence of an affidavit accompanying the petition for their appointment averring that the new county has 3000 bona fide inhabitants and $5,000,000 assessed valuation, a valid exercise of his constitutional authority?" the response is that this does not primarily present a constitutional question and hence no answer is required.

Question number eight, reading: "Has the Governor any constitutional authority to appoint organization commissioners for a new county except on petition with affidavits attached thereto fully complying in their averments with the provisions of Sec. 1281, W. C. S. of 1920, as to population and valuation?" does not in the wording thereof primarily frame a constitutional question and is left without reply.

Question number nine, reading: "Has the Governor the right to appoint as organization commissioners persons not named in the petition addressed to him?" does not present a constitutional question and hence requires no answer.

Question number ten, reading: "Was the appointment of the defendants Redmond, Wilson and Hansen, made upon the petition and the accompanying affidavits attached to the pleadings herein, valid? And have these defendants legal authority to proceed with the organization of the new county of Teton?" likewise does not present a constitutional question and so requires no answer.

The answers to the reserved questions as herein given will be certified to the District Court of Lincoln County wherein the action is pending.

KIMBALL, J., and BLUME, J., concur. Potter, C. J., being unable to sit when the cause was heard Hon. William A. Riner, Judge of the First Judicial District was called in to sit in his stead.

### ON PETITION FOR REHEARING

RINER, District Judge.

This case was decided at the present term of this court. Defendants have filed their petition for rehearing. No new question has been presented in the petition or argument in support thereof which was not considered before the opinion heretofore filed was written. No good purpose could be subserved at this time by reviewing these matters again, inasmuch as the court adheres to the views already expressed.

*Rehearing Denied.*

KIMBALL, J., and BLUME, J., concur.

Potter, C. J., being unable to sit, Honorable William A. Riner, District Judge, was called in to sit in his stead.