# STATE EX REL. BUDGE v. SNYDER
(No. 1179, November 8th 1923; 219 Pac. 735.)

COUNTIES—BOUNDARIES—STATUTES—TETON COUNTY BOUNDARIES—CREATION OF COUNTIES—ORGANIZATION OF COUNTIES—CURATIVE STATUTES—CONSTITUTIONAL LAW.

1. Laws 1921, Chapter 53, Section 1, creating Teton County and describing the west boundary thereof, as: "beginning at the southwest corner of the Yellowstone National Park, and thence south along the western boundary line of the State of Wyoming", etc., held a sufficient description, though the point of beginning as described, is in Idaho, since a line south therefrom could not follow the western boundary of the state which was clearly intended to be the west boundary of said county.

2. The forming of a county is a legislative function and may be done by special act. The organization of a county is a matter of administration, and is effected with the consent of the people of the formed county, by administrative or executive officers, acting under a general law.

3. Where proceedings had under a statute are defective because of some requirement the legislature might have dispensed with by a prior statute, it is not beyond the power of the legislature to dispense with it by a subsequent curative statute.

4. Laws 1923, c. 21, legalizing the defective organization, under Laws 1921, c. 53, of Teton county, by failure to conform to the general law for organization of counties (Comp. St. 1920, § 1281), which county at the time of the enactment of the curative act was a de facto county, recognized and functioning as such, is not a special act organizing or providing for the organization of a county or regulating county affairs in violation of Const. art. 12, § 2, or article 3, § 27, nor does it violate the constitutional requirements as to enactment of general laws and their uniform operation (Const. art. 3, § 27, art. 1, § 34).

5. Where a curative statute applies to all persons, things, or subjects affected by the conditions to be remedied, even though there be but one, it is valid as a general statute.

6. The main purpose of Laws 1923, c. 21, was to validate the defective organization under Laws 1921, c. 53, of Teton county, and if the Legislature had an additional purpose to correct the description so as to exclude certain territory and could not do so in the manner attempted, the whole curative act would not be void but valid, so far as it effects the main purpose.

7. Teton county, whose de facto status by reason of defective organization under Laws 1921, c. 53, by failure to conform to the general law for organization of counties (Comp. St. 1920, § 1281), was cured by Acts 1923, c. 21, held a legally organized and existing county.

Original proceeding in mandamus by the State, on the relation of James Budge and others, against John M. Snyder, as State Treasurer, involving the organization of Teton County.

*Haggard* and *O'Mahoney for Relators.*

This is an original action in mandamus by taxpayers of that portion of Lincoln County, set aside as Teton County,

to require the State Treasurer to pay to Lincoln County, certain funds derived from the United States forests within, the boundaries of Lincoln County, as defined by Sec. 1260 C. S.  The State Treasurer has paid only a portion of said funds to Lincoln County, and has apportioned the balance to Teton County.  The pleadings and agreed statement of facts, tender an issue of law, as to the legality of the organization of Teton County; relators maintain the negative of this issue upon two general grounds; (a) that the steps required by law for the legal organization of Teton County have not been taken.  (b) the act (Ch. 21 Laws 1923), organizing said county, is void; the Legislature first enacted Chapter 53 Laws 1921, for the creation of Teton County, prescribing its boundaries; thereafter certain steps were taken for the organization of said county; subsequently a question arose as to the validity of its organization in a suit, brought in Lincoln County, and certified to this Court, upon reserved questions which involved a question as to the sufficiency of the property valuation and population within the area of the proposed county; this question was disposed of in Budge et. al, v. Com'rs., 208 Pac. 874, upholding Sec. 1281 C. S. requiring a $5,000,000.00 property valuation and at least three thousand inhabitants for the formation of a new county; the District Court of Lincoln County thereupon enjoined its commissioners from levying a tax for the compensation of the organization officers, appointed by the Governor.  The Legislature thereafter enacted Chapter 21 Laws 1923, for the evident purpose of validating all acts or proceedings theretofore had for the creation and organization of Teton County and prescribed its boundaries, which differed in some respects from the boundaries prescribed for it by the Act of 1921; the Act of 1923 therefore attempted to create and organize a different county from that created by the Act of 1921, without taking the steps required by Ch. 91 C. S. 1920, or following the requirements of Art. XII Sec. 2 of the Constitution; the pro-

ceedings were void; Board v. Woods, et al, 18 Wyo. 335, 8 Cyc. 1023; Burgett v. Norris, 25 O. St. 308; Quaker City Bank v. County, 59 Fed. 660; The Constitution did not authorize the act. Sykes v. Mayor, 55 Miss. 115; Katzenberger v. Aberdeen, 121 U. S. 172; Granada Co. v. Brown, 112 U. S. 261; The Legislature may not organize a county by enactments. Com'rs. v. Perkins 5 Wyo. 166, and may only authorize such organization by general law, Art. XII, Sec. 2, and Ch. 91 C. S. 1920, is such a law. By the Act of 1923, it was undertaken to set aside this general law and organize Teton County, by a special law; the Act of 1921 included portions of the State of Idaho and of Park County, in its description creating Teton County; the so called Curative Act of 1923, did not attempt to organize a county of that description, but did attempt to organize a county with different boundaries. As to the second ground, relators contend that the Act of 1923 conflicts with Art. I, Sec. 34 of the Constitution, in not being of uniform operation; it seems clear that no county may be exempted from the provisions of Ch. 91, C. S. 1920. The law of 1923 is not of uniform operation; Art. III, Sec. 27, prohibits special laws regulating county or township affairs; this act is not general. Shaw v. Harris, 103 Pac. 777; Carlton v. Johnson, 55 So. 975; 61 Fla. 15; State v. A. T. & S. Co., 151 Pac. 305; Univ. v. Com'rs., 112 Pac. 215; Dillman v. State, 20 Wyo. 404. Nothing in the Budge case holds to the contrary; if the Act of 1923 should be held a repeal of the general law, we are left without a general law for the organization of new counties, and without power to organize a new county, in view of the Constitutional requirement of a general law on the subject. But, it is not a repeal of the general law; Art. XII, Sec. 2, requires a majority vote to divide a county; a validating act may cure defects in the form of irregularities, but not jurisdictional defects. Cooley Con's. Lim. 6th. ed. 456, 543. The legislature cannot validate retrospectively, acts or contracts which it had no power to per-

mit or sanction in advance, Cooley Lim. 7th ed. 543. Defendants cite Forde v. Schofield, 165 Pac. 594, a Montana case; the Montana Constitution differs from ours in not requiring a general law for county organization. The case is not in point; nor is the case of State v. Carter, (Wyo.) 215 Pac. 477; nor McGarvey v. Swan, 17 Wyo. 120, involving a law held to be general in its nature, nor State v. Sherman, 18 Wyo. 169; Relators have a right to maintain this action as electors of the state to prevent injury and damage to taxpayers of Lincoln County. The jurisdiction of this Court is not circumscribed as are the Federal Courts by Art. III of the Federal Constitution, the State Government possessing all power not withheld in its Constitution. The question is one of public right which may be protected by mandamus. High, Ex. Leg. Rem. 421; State v. Tanzy, 49 O. S. 656, A special interest need not be shown as was required in Frothingham v. Mellon, 43 S. C. R. 597; A Constitutional right to vote on county division cannot be divested by legislation, Frost v. Pheiffer, 58 Pac. 147; The general law was not repealed by implication, Lewis Suther, Stat. Const. Vol. 1, 532; 36 Cyc. 1093; The original creation of Teton County was invalid. An examination of the authorities cited by respondent, from the different states will show that they are based upon Constitutional provisions different from ours. There being no organized county of Teton, the funds should be paid to Lincoln County.

*W. C. Mentzer* and *P. W. Spaulding* for Respondents.

The preamble of Chapter 21 Laws 1923, indicates that the Legislature understood the dilemma in which Teton County had been placed, by its failure to accurately describe the boundaries of that county, in the Act of 1921, or to repeal certain provisions of 1281 C. S.; the Act of 1923 operated to ratify, approve, confirm and validate the formation and organization of said county of Teton, and repeal certain portions of Sec. 1281 C. S. Const. Art. XII, Sec. 2, provides for the creation and organization of new counties. Art. III Sec. 27, has a bearing on this case. The Legislature may en-

act laws on any subject not restricted by the Constitution. State v. Irvine, 14 Wyo. 318; Budge et al, v. Board, 208 Pac. 874. In the Budge case this Court did not pass upon the question of repeal, holding that it should first be determined by the District Court. There was no question as to the power of the Legislature to repeal Section 1281, C. S. A Legislature may cure defects in legislation, wherever it had power to so legislate in the first instance, 12 C. J. 1091; Williamstown School Dist., 12 S. W. 298. The Legislature had power to repeal 1281 C. S., in its 1921 enactment. Redlands v. Brooks, 91 Pac. 150. It is true that the boundaries prescribed for Teton County, in the Act of 1921, differed from the description thereof stated in the Act of 1923; but the Legislature had power to correct said description, by eliminating the Idaho and Park County territory, erroneously included in the Act of 1921; The qualified electors residing within the territory correctly described in the Act of 1921, voted in the affirmative for county division, and said territory contained a sufficient number of inhabitants and of property valuation for its organization as a county. The effect of the Act of 1923, was:

1st. To accurately describe the territory to be included in Teton County.

2nd. To repeal the provision of the general law, requiring three thousand inhabitants and $5,000,000.00 of assessed property valuation, by reducing the number of inhabitants and property valuations to the minimum Constitutional requirements; this it had authority to do. Board v. Wood et al, 18 Wyo. 316; by an act operating retrospectively; State v. Abraham, 117 Pac. 501. An appellate court in reviewing a judgment may notice subsequent legislation and cure, possible errors therein. U. S. v. The Peggy, 1 Cranch 109; Curative acts apply to pending proceedings, 2 Lewis Suth. Stat. Const. 1237; Cooley's Cons. Lim. 7th ed. 543; Faver v. Wayne, 203 S. W. 22; Taylor v. Tenn. Co., 72 So. 206; State v. Lewis, 168 Pac. 952, 12 C. J. 1087. Special laws

may repeal general laws, 36 Cyc. 1094; Legislatures are presumed to have regarded constitutional limitations as carefully as the courts. Garrett v. Com'rs. 230, S. W. 1010. The vote of electors is upon the question of division and not upon boundaries, the latter being a legislative question. Board v. Wood, 18 Wyo. 316. No intent to violate the Constitution is to be attributed to the Legislature. Board v. Wood, supra; Dillon v. State, 20 Wyo. 404. Where two acts are repugnant, the latter act will prevail, 36 Cyc. 1073. A general repeal clause is sufficient; the Legislature may determine the necessity of a special act. Argol v. Co. 181 Pac. 84; State v. Schofield, 165 Pac. 594. The whole matter of county division or creation is political, and belongs to the Legislative Department. Pershing Co. et al., v. Judicial Dist. 183 Pac. 314. The inhabitants of a county have no vested rights as far as boundaries of the county are concerned, and the same may be changed without their consent. Pershing Co. v. Dist. Ct., supra. The Act of 1923 is valid, State v. Schofield, supra. Courts will not interfere with a legislative determination, that a special law was necessary, at least until it is clear that a general law could have been adopted. State v. Carter, (Wyo.) 215 Pac. 477; McGarvey v. Swan, 17 Wyo. 120; State v. Sherman, 18 Wyo. 169; State v. Snyder, (Wyo.) 212 Pac. 771. Curative acts are permissible to correct errors. Charlotte Co. v. Com'rs. 67 L. ed. 2. A recent decision of the United States Supreme Court has decided on principle, this identical question. Com'r. v. Mellon, 43 U. S. S. Ct. 597; Mandamus may issue on the information of the party beneficially interested. 6319 C. S. The motion of the Attorney General to dismiss this action is conceded. People v. Budd, (Cal.) 47 Pac. 594; Douglas v. Ruffin, (Cal.) 16 Pac. 783. Our mandamus statute comes from Ohio; a private citizen may not invoke the aid of mandamus to require performance of a public duty. State v. Murphy, 3 O. Cir. Ct. 332, followed in Babbett v. Dresher, 10 Kans. 9, followed on principle in School

· Dist. v. Board, 15 Wyo. 73; see also Stuart v. Dist., 30 Mich. 69. Relators have not shown special interest.

The description in the Act of 1921 did not include any portion of the State of Idaho. The rule applicable to the construction of deeds, applies. 15 C. J. 399; Baker Co. v. Benson (Ore.) 66 Pac. 814. The elimination of Alpine Precinct by the Act of 1923, did not invalidate the vote had on the question of division. Nor constitute a "Division" of Teton County in the sense that the term is used in Art. XII, Sec. 2 of the Constitution. Wheeler v. Herbert, 92 Pac. 354. The identity of a county does not depend upon its boundaries, if its political organization continues. Crawford v. Marion, 16 Ohio 468. Creating a new county and taking territory from one and adding it to another are distinct acts, the results of which are entirely dissimilar. Frost v. Pheiffer, 26 Colo. 338, 58 Pac. 147. Courts will not interfere with Legislative judgment as to the need of special legislation. Wordale v. Dorst, 44 L. R. A. (NS) 88. The word "Affairs" as used in Art. III, Sec. 27, of the Constitution does not include creation, organization or description of County boundaries. Merchants Bank v. McKinney, 48 N. W. 846, cited by relators, sustains respondents position, which is also true of Mass. v. Mellon, supra. Relators are without right to maintain this action, and the judgment should be for respondent.

KIMBALL, Justice.

This is an action in mandamus commenced in this court. The respondent is the state treasurer, who, it appears, has in his hands forest reserve funds which he is required by law to apportion to the counties containing forest reserve lands. Secs. 137, 138, Wyo. C. S. 1920. In making the apportionment he has awarded a part of the funds to the new county of Teton. The forest reserve lands and all other lands in this county were formerly included within the boundaries of Lincoln County from which the new county was carved. The action is brought in the name of the state, on the relation of seven citizens and taxpayers residing in

the new county. They deny, however, that the new county
has been legally organized, allege that they are still citizens
and taxpayers of Lincoln County, and, as such, seek by this
action to have us require the Treasurer to apportion said
funds so that Lincoln County will receive the amount now
apportioned and about to be paid to the new county.

Counsel for respondent contend that the relators have
not sufficient interest in the result of the action to invoke
the relief asked. They might have contended, further, that
Teton County, which is not a party to this action, is a *de
facto* county, and that the legality of its organization can-
not be attacked collaterally, but only by *quo warranto*.
School District v. Commissioners, 15 Wyo. 73; 86 Pac. 24;
11 Ann. Cas. 1058; 15 C. J. 418; 19 R. C. L. 703. A con-
sideration of either of the questions just suggested might
lead to a judgment for the respondent, without a decision
as to the legal existence of Teton County, a point which has
been fully and ably argued and which we think the public
interest requires to be settled. Accordingly, we have first
investigated the grounds for challenging the validity of the
organization of the county, and as we are clearly of opinion
that they are insufficient, that will be the reason' for our
judgment, and we shall not decide whether the relators
have sufficient interest to maintain the action, nor whether
we would have a right in this action to hold that a county
*de facto* is not one *de jure.*

The case has been submitted on the pleadings and an
agreed statement of facts. The facts which we deem neces-
sary to an understanding of our views will be noticed as we
proceed.

In Budge v. Board of Commissioners (Wyo.) 208 Pac.
874, it was held that Teton County was legally formed by
an act of the legislature of February 15, 1921 (Laws 1921,
c. 53). We do not understand that the correctness of that
conclusion is now questioned, but our attention is called to
a mistake in the description of the west boundary line of
the new county as set forth in section 1 of the act, viz: "be-

ginning at the southwest corner of the Yellowstone National Park," and thence "south along the western boundary line of the State of Wyoming" etc. This point of beginning is in Idaho and it is not possible to run a line south from that point along the western boundary line of Wyoming. It is not urged that any one has been deceived by this description. No one could have been misled unless willing to believe that the legislature intended to include in the new county a part of our neighbor state. We have no doubt that every person interested in the new county could tell from the language of the act the intention of the legislature that the western boundary line of the county should be identical with the western line of the state from the Yellowstone Park south. We think, therefore, that Teton County was sufficiently described and legally formed by the act of 1921.

As stated in Budge v. Board of Commissioners, supra, there is a clear distinction under our constitution between the "forming" and the "organization" of a new county. The state constitution (Art. XII, Sec. 2) provides that:

"The legislature shall provide by general law for organizing new counties, locating the county seats thereof temporarily and changing county lines. But no new county shall be formed unless it shall contain within the limits thereof property of the valuation of two million dollars, as shown by last preceding tax returns, and not then unless the remaining portion of the old county or counties shall each contain property of at least three million of dollars of assessable valuation; and no new county shall be organized nor shall any organized county be so reduced as to contain a population of less than one thousand five hundred bona fide inhabitants, and in case any portion of an organized county or counties is stricken off to form a new county, the new county shall assume and he holden for an equitable proportion of the indebtedness of the county or counties so reduced. No county shall be divided unless a majority of the

qualified electors of the territory proposed to be cut off voting on the proposition shall vote in favor of the division.''

The forming of a county is a legislative function and may be done by special act. The organization of a county is a matter of administration and is effected with the consent of the people of the formed county by administrative or executive officers, acting under a general law. Commissioners vs. Perkins, 5 Wyo. 166, 172; 38 Pac. 915; Commissioners vs. Woods, 18 Wyo. 316, 331; 106 Pac. 923, 107 Pac. 753.

When Teton County was formed in 1921 the general law for the organization of new counties was contained in Chapter 91 (Secs. 1279-1293) Wyoming Compiled Statutes for 1920. Section 1281 provides that, ''No new county shall be organized, nor shall any organized county be so reduced as to contain a population of less than 3000 bona fide inhabitants; nor unless the new county shall contain within the limits thereof property of the value of $5,000,000, as shown by the last preceding assessment for taxation, and not then unless the remaining portion of the old county, or counties, shall each contain property of at least $7,000,000 of assessable valuation, as shown by the last preceding assessment for taxation.''

It is admitted that after Teton County was formed by the act of 1921 the steps required by the general law for the organization of the new county were taken, and that Lincoln County has been left with a population of more than 3000 and property of the assessed value of more than $7,-000,000. It is also admitted that Teton County did not have a population of 3000, nor assessable property of the value of $5,000,000, but did have a population of more than 1500 and property of the assessed value of more than $2,-000,000. It appears, then, that the newly formed county, having the constitutional qualifications of a county, but not able to meet the statutory requirements in excess of those demanded by the constitution, did, nevertheless, organize under the general law for the organization of counties. There-

after, at the regular primary and general elections in 1922 the people of the new county elected county officers who duly qualified and became acting officers some time before February 15, 1923. In the meantime some steps in the organization of the county were called in question in Budge v. Board of Commissioners, supra, in which we held, among other things, that section 1281, supra, was a valid legislative enactment. As such, it was an obstacle in the way of the organization of the new county unless it had been repealed or its operation in some way suspended by the act of 1921 forming the new county. On the remand of Budge v. Board of Commissioners to the District Court it was there held that the act of 1921 did not repeal or suspend the operation of section 1281. Accepting as correct the decisions in that case both by this court and the District Court, the organization of Teton County as it existed on February 15, 1923, had been accomplished in violation of a statute but without running counter to any provision of the constitution, and nothing had been done that might not have been authorized in advance by the legislature.

The statutory inhibition as declared by section 1281, insofar as it forbade the organization of a formed county having a population of between 1500 and 3000 and assessable property of a valuation of between $2,000,000 and $5,000,-000, was not a necessary part of the general law for the organization of counties, and the constitutional mandate that the legislature enact a general law for that purpose could have been fully obeyed without that inhibition. The act as originally passed did not contain it (Laws 1895, Ch. 59), but it was inserted by amendment, in 1917 (Laws 1917, Ch. 58).

On February 15, 1923, the governor approved an act which appears as Chapter 21, Laws of 1923, entitled, "An Act to declare the organization of Teton County as herein set forth valid and declaring that said county of Teton is fully created, established and organized for all purposes and to repeal all acts and parts of acts in conflict herewith."

The purpose of the act is declared in a preamble as follows:

"WHEREAS, Chapter 53 Session Laws of Wyoming of 1921, provided for the creation and organization of Teton County, and pursuant thereto, upon petition presented, the Governor of Wyoming duly appointed Commissioners for the organization of said County of Teton, and said Commissioners duly called and held an election within and throughout said Teton County upon the proposed division of counties so as to form said County of Teton, and at said election the proposition in favor of organizing the said County was carried; and,

WHEREAS, The primary election provided by law was held within and throughout the said Teton County on August 22nd, 1922, and candidates were then duly nominated for the various offices of said County, and

WHEREAS, The general election provided by law was held within and throughout said County on the 7th day of November, A. D. 1922, and County Commissioners and other officers of said County were then duly elected to take office January 1st, 1923, and said officers so elected have qualified as provided by law; and,

WHEREAS, The geographical conditions surrounding said Teton County are such that it is expedient, necessary and proper that said County with an assessed valuation at the time of the organization of said County of Two Million, Two Hundred and Thirty-five Thousand Dollars and a population at that time, of sixteen hundred and twenty, which said valuation and population have since increased, be at this time organized and established for all purposes as an existing county of the State of Wyoming, therefore, be it enacted," etc.

It is then enacted, by Section 1, that: .

"All acts and proceedings aforesaid for the establishment and organization of said Teton County are hereby ratified and confirmed and declared legal, valid and binding, and said Teton County, described as follows:   *   *   * is hereby declared to be a duly created, formed, established and organized County of the State of Wyoming and to exist as such for all purposes from and after the first day of January, 1923, and the officers so as aforesaid elected and qualified are hereby declared to be the officers of said county, with full power as such."

The omitted description will be noticed later.

Section 2 provides that Teton County shall be a part of the Third Judicial District and that one term of court shall be held therein each year at a time to be fixed by the Judge, and section 3 temporarily attaches the new county to Lincoln County for purposes of representation in the legislature.

At the same legislative session, by an act approved February 28, 1923, (Laws 1923, c. 77) defining judicial districts and fixing the time for holding terms of court therein, it was again provided that Teton County should be included in the Third Judicial District, and the time for holding the annual term of court in said county was definitely fixed.

The legislative purpose to recognize the new county and to ratify its organization is too plain to require discussion. That purpose should be given effect unless in so doing some constitutional provision will be violated. In claiming that the organization is invalid the relators attack the constitutionality of the act of February 15, 1923 on several grounds. The substance of their principal contention is that Teton County, lacking the qualifications for organization prescribed by section 1281, supra, could not be legally organized, and that the challenged act by which the legislature attempted to validate its organization is a special act for the

organization of Teton County contrary to section 2 of Article XII, supra, of the constitution.

·The act in question was evidently intended as curative and falls within that class of statutes of which Judge Cooley in his work on Constitutional Limitations (7th Ed. p. 531) said:

"The rule applicable to cases of this description is substantially the following: If the thing wanting or which failed to be done, and which constitutes the defect in the proceedings, is something the necessity for which the legislature might have dispensed with by prior statute, then it is not beyond the power of the legislature to dispense with it by subsequent statute."

This general statement of the rule has been quoted innumerable times and is amply sustained by cases of which we now cite only a few wherein the rule is applied to sustain the right of the legislature by such an act to validate the organization of public corporations. State vs. Pauley, 83 Kans. 456; 112 Pac. 141; Alatalo vs. Shaver, 45 S. D. 163, 186 N. W. 872; People vs. Stitt, 280 Ill. 553 117 N. E. 784; Richman v. Muscatine County, 77 Ia. 513; 42 N. W. 422, 4 L. R. A. 445; 14 Am. St. Rep. 308; State v. Larkin, 41 Tex. Civ. App. 253; 90 S. W. 912; Schultz v. State, 80 Fla. 564; 86 So. 428; Charlotte Harbor & N. Ry. Co. v. Wells, 78 Fla. 227 82 So. 770, affirmed 260 U. S. 8, 43 Sup. Ct. 3; 67 L ed 100.

There is no claim that our constitution contains any provision against retrospective legislation that prevents the enactment of curative laws; nor is it claimed that the invalidity of the transaction which the legislature intends to ratify can be urged as an objection to the curative act, for, of course, there would be no occasion for such an act if the transaction to be ratified were valid without it.

It is conceded that the legislature of 1921 which passed the act forming the county might have provided by general law for the organization of new counties having no more

than 1500 inhabitants, and, therefore, it had the power to provide by general law for the organization of Teton County. The legislature did not then exercise that power, and the new county, wanting a qualification "the necessity for which the legislature might have dispensed with by prior statute," was defectively, or to be more exact, incompetently, organized. This would seem, under the rule, to present a proper case for legislative correction by a curative act. In passing such an act we do not think that it can be justly said that the legislature undertook to organize a county or to permit a county to organize under special law. The act purports neither to organize Teton County nor to provide any machinery for its organization. On the contrary it declares that the county has already been organized by certain steps taken under a general law enacted long before. We think we should view it as a curative act legalizing the defective organization of a county. Tifft v. Buffalo, 82 N. Y. 204; Johnson v. Wells County, 107 Ind. 15; 8 N. E. 1; State v. Squires, 26 Ia. 340.

State v. Squires, last cited, is an instructive case by a very able court, and, as appears from the opinion, decided after careful and elaborate attention at the hands of counsel. By a general law of Iowa for the organization of independent school districts it was provided that such districts might be organized to cover territory containing 300 inhabitants after giving ten days' notice of the proposed organization. In a proceeding by *quo warranto* against the officers of a district organized under this law, an issue arose which required a decision whether, if the district did not contain 300 inhabitants, and the required ten days' notice had not been given, the legislature could by curative act validate the district. It was conceded that under the Iowa constitution such a district could not be created by special act, but only under general laws. It was claimed that the curative act relied on gave to the district its only legal vitality, and since the legislature could not do this by a direct creative act, it could not do it indirectly under the

guise of a curative act.  The court answered this by saying that the legislature in passing the curative act was doing indirectly that only which it might have done directly, and summarized its conclusions thus:

"We have already referred to the point, that, in order to the rightful exercise of the legislative power to cure a defective proceeding, the legislature must have possessed the power to authorize the result by prior legislative enactment.  But it is not necessary that it might have accomplished the result in the precise manner it has adopted to cure the defect.  In the case at bar, the legislature might, by a general law providing for the incorporation of independent school districts, have authorized their organization in districts having less than three hundred inhabitants, and upon less than ten days' notice.  Having this power, it may rightfully legalize or cure the organization which was defective only because of a failure to comply with the particular requirements which it was competent for the legislature to have waived entirely in the original law.  It was a matter of discretion with the legislature to require the performance of these precedent conditions; hence, it may waive a failure to perform them."

This reasoning upon issues and contentions almost identical with those which we are now considering in the case at bar is quite convincing.  In our examination of other authorities we have found no reason to question the decision in State v. Squires, but find it cited, often with express approval, in many cases, among which are:  Independent Dist. v. Independent Dist., 62 Ia. 616; 17 N. W. 895; Mc-Surely v. McGrew, 140 Ia. 163; 118 N. W. 415, 132 Am. St. Rep. 248; Reed v. Plattsmouth, 107 U. S. 568; 2 Sup. Ct. 208, 27 L. ed. 414; State v. Brown, 97 Minn. 402; 106 N. W. 477; 5 L. R. A. (NS) 327.

The Iowa case was also the precedent relied upon for the decision of a similar point in Indiana in Johnson v. Wells County, supra, where an act to legalize the laying out of a

road was held not to be a special statute for the laying out and opening of a road. In a later case in Indiana, where municipal corporations may not be incorporated except under general laws (Longview v. Crawfordsville, 164 Ind. 117; 73 N. E. 78, 68 L. R. A. 622, 3 Ann. Cas. 496), a curative act legalizing the incorporation of a town has been approved, citing Johnson v. Wells County, supra, Stembel v. Bell, 161 Ind. 323; 68 N. E. 589.

In State v. Larkin, 41 Tex. Civ. App. 253, 90 S. W. 912, it was contended that an act validating the incorporation ·of the city of Athens was "authorizing the incorporation of said city." It was held that, "while the legislature could not under the constitution by special act create a municipal corporation having a population of 10,000 inhabitants or less, nevertheless, it had the power by special act to pass a curative act legalizing the defective incorporation of a city already in existence under the general laws." The decision of this point in State v. Larkin is expressly approved in a note to section 68 of Dillon on Municipal Corporations (5th edition).

In at least two cases it has been held that a curative act legalizing a *de facto* private corporation does not violate the constitution by creating the corporation by special act. Bank v. Davis, 16 Barb. (N. Y.) 188; Central etc. Ass'n. v. Alabama Gold Life Ins. Co., 70 Ala. 120.

We think, as already hinted, that the parties to this action admit that Teton County was a *de facto* county at the time of the passing of the curative act, and from the language of the act it appears that the legislature acknowledged that condition. The commissioners to organize the county were appointed by the Governor of the State, and the executive department has taken no steps to prevent the organization nor to test its legality. Since the approval of the curative act a term of the district court has been held in the county at the time fixed by the legislature by Chapter 77, Laws of 1923, supra, and there are now pending in that court criminal, civil and probate cases. So the county is not only

functioning as a county but is doing so after recognition by all three departments of the state government. It might be that in these circumstances, even without the curative act, the state itself, and for better reasons, an individual, would now be precluded from questioning the legal existence of the county, but we do not place our decision on that ground, nor undertake to lay down a rule on the point thus suggested. See: Note to State v. Harris, 102 Minn. 340, 113 N. W. 887 as reported in 13 L. R. A. (N. S.) 534.

Our opinion is that the curative act is not a special act organizing or providing for the organization of a county, and, therefore, is not, for any reason thus far noticed, violative of section 2 of Article XII of the state constitution.

It is also contended that the said act is void because it is a special act regulating county affairs contrary to section 27 of Article III of the state constitution. Much that we have already said can be used in answer to this contention, for the argument in support of it is based on the premise that the act provides for the organization of a county. We may add that if the act were to be held an act for the organization of a county, it would not be a regulation of county affairs within the meaning of that phrase as used in this section of the constitution. Hankins v. Mayor, 64 N. Y. 22; Holliday v. Sweet Grass County, 19 Mont. 364; 48 Pac. 553; Fragley v. Phelan, 126 Calif. 383, 58 Pac. 923. Any suggested reason why the organization of a county is a regulation of county affairs would be equally applicable to the forming of a county, and counties have always been formed in this state with judicial approval by special act.

There are authorities that intimate that a curative act to be valid must be general in form, and that point is pertinent here in considering whether the act in question violates the closing sentence of section 27, Article III, supra, that "In all other cases where a general law can be made applicable no special law shall be enacted," or section 34 of Article I, that "All laws of a general nature shall have a uniform operation."

Undoubtedly the curative act is special in form, for it applies to Teton county only, and cannot be made to apply to any other. But is this fact controlling? It was said in Budd v. Hancock, 66 N. J. L. 133, 48 Atl. 1023 that:

"A law is special in a constitutional sense when, by force of an inherent limitation, it arbitrarily separates some persons, places or things from others upon which, but for such limitation, it would operate. The test of a special law is the appropriateness of its provisions to the objects that it excludes. It is not, therefore, what a law includes that makes it special, but what it excludes. If nothing be excluded that should be contained the law is general."

This language was quoted by the same court in Van Cleve v. Passaic Valley Sewerage Commrs., 71 N. J. L. 183, at page 207, 58 Atl. 571, at page 580, where it was further said that:

"The purpose of the prohibition against 'special or local' laws is not to prevent legislation where there is but one individual to be dealt with. The purpose is to prevent unfounded discrimination where there are two or more individuals to be dealt with."

There are several well considered cases which illustrate the reluctance of courts to hold curative acts to be special or local when they "apply to all persons, things or subjects affected by the conditions to be remedied." State v. Brown, supra; Cole v. Dorr, 80 Kans. 251, 101 Pac. 1016, 22 L. R. A. (NS) 534; Pollock v. Kansas City, 87 Kans. 205, 123 Pac. 985, 42 L. R. A. (NS) 465. The conditions to be remedied in the case at bar, as recited in the preamble to the curative act, existed in only one case, and are not likely ever to recur. If the law had been drawn so as to be general in form by setting forth the state of facts and then declaring that when those facts arose certain results should follow, it would in that form have had no other or greater operation

than the act in question. State v. Squires, supra; Richman v. Muscatine County, supra. In these circumstances the evil which the constitution sought to provide against by prohibiting special laws in certain cases did not exist. We think, therefore, that the curative act is not special in a constitutional sense, and, as it operated upon the only county to be dealt with, it is not affected by the section requiring uniformity. If we were to be convinced that we are mistaken in this view, we would hold that this is a case where the legislature has decided rightly that a general law was not applicable. McPherren v. Carter (Wyo.) 215 Pac. 477.

A metes and bounds description of the new county, as set forth in section one of the curative act, has been omitted from our quotation, supra, of that section. That description differs in two particulars from the description of the county in the act of 1921 by which the county was formed. It is not necessary to quote either description. The first difference is in the location of the point of beginning, the curative act placing that point where it should have been, and evidently was intended to be, by the earlier act. This mistake in the earlier act has already been noticed. Its correction by the curative act is not made the basis of any contention. The second difference is in the southern boundary line. If the description in the curative act controls the county does not include a territory referred to in this case as Alpine Election Precinct, which was included within the lines described in the act forming the county. It is agreed that this precinct contains a population of 46 and property of the assessed value of $34,300.00.

The issues in this case neither require nor warrant a decision which will determine the correct lines of the new county. If in the future a judicial inquiry be necessary to settle the county lines, parties not now before the court will probably be entitled to be heard, and the decision may be influenced by facts not shown in this action. If the county be now legally organized and existing, either with or with-

out Alpine precinct, the relators are entitled to no relief under the allegations of their petition.

It is contended, however, that the last mentioned difference between the metes and bounds description in the curative act and the description in the act forming the county shows that the legislature of 1923 did not intend to recognize the county that had been previously formed and organized and which then existed *de facto,* but intended to establish a new county that had neither been formed nor organized and which had no *de facto* existence. We cannot accept this view. We think it clear that the main purpose of the curative act was to validate the county that had been formed by the act of 1921 and organized by the procedure described in the quoted preamble. If that were the only purpose, the metes and bounds description was unnecessary, for the county was clearly and definitely identified without it, and we should treat as surplusage so much of that description as is not in harmony with the legislative intention gathered from the act as a whole. 36 Cyc. 1127; Sedgwick on Construction of Stat. & Const. Law (2nd Ed.) p. 354; Black on Int. of Laws, p. 83. But this main purpose may not have been the only purpose. The legislature of 1923 may have believed that the inclusion of Alpine Precinct within the boundaries of the new county was the result of a mistake which it had a right to correct, and may have inserted the metes and bounds description for the purpose of making the correction. Whether, under the constitution, that purpose could be accomplished in the manner in which it was attempted is a question we need not decide. If we were to hold that it could not, we would not on that account declare the whole act void, but would uphold it insofar as it effects what we believe to have been its main purpose as above stated. 36 Cyc. 976; State v. Shelton (Wyo.) 213 Pac. 93.

We are of opinion that Teton County is a legally organized and existing county entitled to receive the funds in question, and the relators' prayer for a peremptory writ of mandamus must be denied.

*Denied.*

POTTER, Ch. J., and BLUME, J., concur.

NOTE—Headnotes (1), (2) and (7), see Counties, 15 C. J. Secs. 4, 9, 45, 46 and 47; (2), (3), (4), (5) and (6), see Statutes, 36 Cyc. pp. 976, 991, 1002, 1016, 1127.   (1925 Anno.); (3), see Constitutional law, 12 C. J. Sec. 786.